62 F.3d 1427
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sonia VELASQUEZ, as administrator of the estate of Timoteo
Velasquez, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 93-16884.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 13, 1995.
Decided July 31, 1995.
 
 Before: FLETCHER, REINHARDT, AND NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Sonia Velasquez, as administrator of the estate of Timoteo Velasquez, appeals the district court's judgment for the defense in her husband's medical malpractice action against the United States under the Federal Tort Claims Act. This court had reversed a previous defense verdict and remanded for a trial on whether Velasquez would have consented to the surgery had he been properly informed of the alternatives; on remand the district court found that he would have consented.
 
 FACTS
 
 3
 In early 1984 Timoteo Velasquez developed chest pain and a swollen, tender mass on his chest. He sought treatment at the Naval Regional Medical Center Adult Clinic at Pearl Harbor, Hawaii. The Clinic subsequently referred Velasquez to Tripler Army Medical Center in Honolulu.
 
 
 4
 Physicians at Tripler initially diagnosed either a tumor or an infection in the cartilage between his ribs. They conducted a bone scan, which was normal, and a gallium scan, which showed abnormal activity in the tissues. They did several tests to detect infection or malignancy, which were all negative, and prescribed a three-day trial of intravenous antibiotics to affect any infection that might be present. The antibiotics had no effect on the mass, and Velasquez exhibited none of the symptoms associated with infection such as fever or elevated white blood cell count. The physicians therefore concluded that the mass was not an infection. Because the probability that the mass was malignant exceeded fifty percent, they proposed surgical removal of the mass.
 
 
 5
 The Tripler staff presented a consent form to Velasquez for his surgery. The form designated the procedure as an "excisional biopsy" and stated: "if mass appears malignant will also remove involved rib and part of the sternum." After lengthy discussions with the thoracic surgeon, Velasquez signed the form.
 
 
 6
 Physicians then performed a "wide en-bloc resection," in which the mass, the involved rib, parts of the ribs above and below the mass, and part of the sternum were surgically removed. During the surgery the physicians conducted no tests to determine whether the mass was malignant before removing the adjacent ribs and part of the sternum.
 
 
 7
 After the surgery, pathological examination revealed that the mass was not malignant and pathologists diagnosed it as acute perichondritis -- inflammation of the cartilage. Pathologists did not determine what had caused the inflammation, but opined that it was probably caused by some trauma to the chest. Velasquez subsequently underwent reconstructive surgery to improve the function and appearance of his chest.
 
 
 8
 Velasquez died during pendency of this suit and his wife, as administrator of the estate, was substituted as plaintiff-appellant.
 
 PROCEEDINGS
 
 9
 After exhausting his administrative remedies, Velasquez sued the United States under the Federal Tort Claims Act (FTCA) alleging that the Tripler physicians had committed malpractice by failing to obtain his informed consent.
 
 
 10
 After the nonjury trial required by the FTCA, the district court found that Velasquez had been adequately informed of the risks and benefits of the procedure and alternatives to treatment, and hence that his consent was "informed," and that the procedures followed by the Tripler physicians met the relevant standard of care in 1984, and hence that the physicians had not breached any duty to Velasquez. The court entered judgment for the United States.
 
 
 11
 Velasquez appealed that judgment to this circuit, which held that Velasquez had not been adequately informed that continued administration of antibiotics presented an alternative to surgery and remanded for a trial to determine whether "acting reasonably and rationally" Velasquez would have undergone the treatment had he been properly informed of the alternatives.
 
 
 12
 After the trial on remand, the district court found that acting "rationally and reasonably Velasquez would still have undergone the radical excisional biopsy even if he had been informed of the possibility of continuing antibiotic treatment." It appeared, the court held, "by clear and convincing evidence that such continued treatment would have been futile."
 
 
 13
 As an alternative basis for its decision, the district court found "that Velasquez suffered no damage." A wide resection, the court held, "was the accepted practice in 1984 for treatment of chest masses of the size that Velasquez had," and "excision of the mass for biopsy was not a recognized alternative to en-bloc resection in 1984."
 
 
 14
 Velasquez challenges both conclusions on this appeal.
 
 ANALYSIS
 
 15
 This court reviews the district court's findings under a clearly erroneous standard. Hutchinson v. united States, 915 F.2d 560, 561 (9th Cir. 1990). Given the substantial evidence cited in the district court's findings of fact to the effect that continued antibiotic treatment would not have affected the mass and the need for surgery, we hold that the court's findings on that issue were not clearly erroneous.
 
 
 16
 Velasquez raises a second issue on this appeal, however. He argues that, given the non-malignancy of the neoplasm, wide en-bloc resection was unnecessary; a less intrusive, staged approach to surgery involving removal of some of the mass for pathological diagnosis would have shown that the mass was benign and that removal of the mass alone, without wider resection of the involved ribs and part of the sternum, would have been enough. Because the Tripler physicians did not discuss with him this less intrusive option before obtaining his consent to the surgery, Velasquez argues that his consent was not adequately informed. We agree.
 
 
 17
 Before the district court was a study published in the December 1982 edition of the Annals of Thoracic Surgery which surveyed the results of chest wall neoplasm treatments from 1949 to 1976. The authors reported that only "twenty percent of the patients with benign neoplasms were treated by en bloc [wide] resection of the mass and the surrounding structure. The remainder of the patients had biopsies, observation, or both." That report went on to recommend that "simple excision of the mass may be all that is necessary if the signs, symptoms, and roentgenographic appearance of the lesion suggest that it is benign. If, however, these variables suggest that the neoplasm may be malignant, the lesion should be treated by radical resection." Given that 80% of the chest wall neoplasms surveyed were treated with biopsy and simple excision, we cannot accept the district court's conclusion that "excision of the mass for biopsy was not a recognized possible alternative to en-bloc resection in 1984."
 
 
 18
 Each of the medical experts who testified agreed that a staged approach, in which part of the mass would be removed for diagnosis before en-bloc resection, was advocated in medical journals during the mid-1980's, and the district court had before it several articles explaining the benefits of the staged approach. Although there was substantial evidence before the district court suggesting that wider resection was still within the standard of care and perhaps even preferred, the evidence was also clear that a staged approach was a recognized alternative.
 
 
 19
 The consent form that Velasquez signed itself suggests that the Tripler physicians recognized the possibility of a staged approach to treatment in this case. That form designated the procedure as an "excisional biopsy." A biopsy is a "study of tissue taken from a living organism." In other words, Velasquez consented to "excision of the mass for biopsy." Only "if the mass appears malignant" did Velasquez consent to removal of the involved ribs and part of his sternum. During the surgery the physicians conducted no tests to determine whether the mass was malignant before they removed the ribs and sternum; they never performed the "biopsy" to which Velasquez had consented. The district court's conclusion that excision of the mass for biopsy was not a recognized possible alternative to en bloc resection was clearly erroneous.
 
 
 20
 The United States has waived sovereign immunity for tort liability arising in "the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. Sec. 2674. Performing surgery without the informed consent of a patient is a statutory tort defined by Hawaii Revised Statutes Sec. 671 et seq. Because the Tripler physicians performed wide en-bloc resection on Velasquez without his informed consent, the district erred when it entered judgment for the United States.
 
 
 21
 The unnecessary radical resection of Velasquez's ribs and parts of his sternum necessitated extensive artificial reconstruction of his chest wall; reconstruction would have been much less extensive had the physicians determined, upon performing an "excisional biopsy", that the neoplasm was benign. Velasquez therefore suffered extensive damage as a result of the physicians' performing wide resection without his informed consent.
 
 
 22
 We therefore REVERSE and REMAND for entry of judgment in favor of Velasquez and an award of damages consistent with Hawaii law.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36-3